UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------------X
JAMESON ENTERPRISES, INC. D/B/A
JAMESON'S PUB AND RESTAURANT and
PATRICK J. KENNEDY,

                                                     Case No. 302CV409 (MRK)

                            Plaintiff,
                        -against-

B.C. FLYNN CONTRACTING CORP. A/K/A
B.C. FLYNN CONTRACTING CORP D/B/A
FLYNN CONTRACTING CORPORATION

                            Defendant.
-----------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF MOTION
IN LIMINE TO PRECLUDE TESTIMONY
AND EVIDENCE CONCERNING LOST PROFITS**

This memorandum is submitted in support of defendant's motion in limine to preclude introduction of testimony and evidence concerning loss of profits allegedly resulting from the loss of Jameson's lease.

I.    **Procedural Background and Undisputed Facts**

This case involves a claim by plaintiff, Jameson Enterprises, Inc. d/b/a Jameson's Pub and Restaurant and Patrick J. Kennedy ("Jameson's") against B.C. Flynn Contracting Corp. ("Flynn") as a result of certain work performed by Flynn relating to the installation of a Nelson Ceramic Blanket on kitchen exhaust ductwork.

On or about May 19, 2000, within days of the expiration of time within which Jameson's was required to abate certain fire code violations, Jameson's retained Flynn to install two (2) layers of Nelson Ceramic Blanket, along with installation of certain fire-stopping on pipe and duct penetrations. A copy of the letter agreement for services dated May 19, 2000 is annexed hereto as Exhibit "A".

Between May 26th and June 1st, Flynn in fact performed the services noted within the

agreement, notably the installation of a Nelson Ceramic Blanket on the kitchen exhaust duct and installation of fire stopping on pipe and duct penetrations.

Upon information and belief, following performance of the work, in or about August, 2000 an inspector retained by the owner of the building inspected the recently installed work and noted that the Nelson Ceramic Blanket had allegedly been installed in a deficient manner. Based upon this observation, in or about December 2000, the owner of the property commenced eviction proceedings against Jameson's for failure to abate certain fire code violations in violation of the terms and conditions of its lease.

Ultimately, in or about April of 2001, Jameson's was evicted from the tenancy, approximately two and one half (2 ½) years prior to the expiration of the lease term. As a result of the eviction, on or about March 6, 2002, Jameson's filed a complaint sounding in negligence and breach of contract against Flynn asserting that, among other things, Jameson's had been damaged as a result of the eviction, which Jameson's asserts was a direct result of Flynn's failure to properly install the Nelson Ceramic Blanket. Jameson's claims damages for lost profits occasioned by the eviction.

To add proper context, it should be noted that at the time Flynn was retained to perform the installation, Jameson's was within days of the expiration of the already extended period within which to have the referenced fire code violations abated. As such, Flynn was under great time constraints to perform the installation. Further, at no time was Flynn advised of any of the prior proceedings between the owner and Jameson's as concerns a certain stipulated settlement entered into between the owner and Jameson's, and the possibility that failure to comply with its terms could result in eviction of Jameson's.

In addition, at no time subsequent to installation of the Nelson Ceramic Blanket was Flynn ever made aware of any deficiency in the installation, or provided with an opportunity to

- 2 -

cure any alleged deficiency.

Based upon information disclosed by plaintiff, it appears that Jameson's will seek to introduce testimony and evidence through Christine K. Startup, CPA concerning the estimate of economic losses suffered by Jameson's as a result of eviction from its business at 600 Summer Street on or about April 16, 2001. As set forth within the report of Christine Startup, Jameson's asserts a loss suffered due to the eviction of $330,200.00, of which $282,735.00 is allocated to lost profits.

II.     **Foreseeability**

In the instant matter, had there been a deficiency in the installation of the Nelson Ceramic Blanket, the proper remedy should have been the remediation of any deficiency by Flynn. However, given the fact that Flynn was never notified of any deficiency, no such opportunity was ever afforded Flynn. Assuming *arguendo* that Jameson's was within it's rights to perform the remediation using another contractor, the level of damages allowable would be limited to the reasonable contract value for remediation of any alleged deficiencies. Based upon information disclosed by Jameson's it is clear that a wholesale remediation of the installation could have been performed for roughly $28,000. Flynn does not agree that a complete reinstallation was required, but does argue that the quote represents the upper limit of any potential damages in this matter.

Additionally, in looking at the scope of the contract and the value, it is entirely unreasonable to assume that Flynn assumed the risk of lost profits and foresaw that failure to properly install the Nelson Ceramic Blanket would ultimately result in termination of the leasehold and loss of profits. Given the fact that the ductwork in question had been unwrapped for many years prior to this installation, it is entirely reasonably to assume that any deficiency in the installation would simply require remediation.

- 3 -

As set forth within *Ambrogio D.M.D v. Beaver Road Associates*, *1999 WL 1120373*, the court in ruling on a motion in limine quoted *Levesque v. D&M Builders, Inc.* *170 Conn. 177, 181, 365 A2d 1216(1976)* for the proposition that for breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste. A copy of the *Ambrogio D.M.D v. Beaver Road Associates* case is annexed as Exhibit "B".

Further, the court in discussing the issue of expected profits noted that the modern view is that such profits may be recovered where they were part of the contract - - **where an engagement to pay them can be found in the terms of the contract or implied from the circumstances in the light of which it was made** - - and where they are not in fact remote or speculative but are proved to a reasonable certainty. (Internal quotation marks omitted) Williston Contract (3rd Ed. 1968 and Supp. 1999), § 1345, p. 234. (emphasis added)

Finally, damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made… Loss may be foreseeable as a probable result of a breach because it follows from the breach (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach has reason to know… 3 Restatement (Second), contracts § 351 (May 17, 1979)(1981) There is no way that lost profits were an event that would follow in the ordinary course of events based upon the contract entered into between these parties or something that Flynn was aware of, or had reason to know. There is in fact, no way Flynn could

have been aware that any deficiencies in the installation of the Blanket would ultimately result in the lost profits claimed.

In reviewing the May 19, 2000 agreement between Flynn and Jameson's, it is worthwhile to note that courts have specifically looked into the issue of compensation for work performed. Flynn was paid $23,580.00 to perform the installation and fire stopping. The claim being put forth for lost profits by Jameson's is in excess of $330,000.00. In looking at this type of issue, courts have noted circumstances under which the price of a contract bears upon assumption of risk. One such circumstance is an extreme disproportion between the loss and the price charged by the party whose liability for that loss is in question. The fact that the price is relatively small suggests that it was not intended to cover the risk of such liability. Another such circumstance is in informality of dealing, including the absence of a detailed written contract, which indicates that there was no careful attempt to allocate all of the risks. The fact that the parties did not attempt to delineate with precision all the risks justifies the court in attempting to allocate them fairly.... Typical examples of limitations imposed on damages under this discretionary power involve the denial of recovery for loss of profits and the restriction of damages to loss incurred in reliance on the contract. *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp.*, 203, Conn. 123, 141-142, 523 A2d 1266 (1987). Additionally, the court in *Boulevard Associates v. Sovereign Hotels, Inc.*, 861 F.Supp. 1132, 1136, (D.Conn. Aug. 30, 1994) noted that consequential damages are not recoverable where the party in breach could not reasonably have foreseen such damage as a probable result of the contract at the time the contract was made.

It is quite clear from the record that Flynn could not possibly have foreseen any such damage as a probable result of the installation of the Nelson Ceramic Blanket at the time the contract was entered into. Given the above circumstances it is proper to preclude introduction of evidence and testimony concerning loss of profit as such damages were clearly not foreseeable.

III.     **Conclusion**

Given the foregoing circumstances and applicable case law, defendant's motion in limine to preclude introduction of testimony and evidence concerning lost profits should be granted in its entirety.

Dated:  January 14, 2004

>                                    Yours, etc.
>
>                                    WELBY, BRADY & GREENBLATT, LLP
>
>
>                                    By: _____
>                                        Paul G. Ryan (ct-19433)
>                                        200 Sound Beach Avenue
>                                        P.O. Box 622
>                                        Old Greenwich, CT 06870
>                                        (203-637-1044)
>                                        pryan@wbgllp.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motion to Preclude and Memorandum of Law were mailed on this date to the following:

Philip D. Russell<br>
Philip Russell, P.C.<br>
71 Lewis Street<br>
Greenwich, CT 06836<br>
203-661-4200

Dated: January 14, 2004

_____<br>
Paul G. Ryan

# FLYNN CONTRACTING CORPORATION

*Mechanical Insulation & Firestopping*

573 Route 303  
Blauvelt, NY 10913

914.365.3000  
914.365.3090 FAX

5/19/00

Mr. Richard Burriesci  
Stamford Marriott Hotel  
Two Stamford Forum  
Stamford, CT. 06901

Re: 600 Summer St.

Gentlemen,

We propose to furnish and install thermal insulation at the above referenced project as shown to us by Mr. Burriesci as follows.

1. Installation of two layers (3" total) of Nelson ceramic blanket on kitchen exhaust ductwork to obtain a two hour rating in shaft. Access door will be accessible.
2. Installation of firestopping on pipe and duct penetrations.

We omit any scaffolding systems.

Price for this work:          $23,580.00

If you would like us to proceed, kindly forward a purchase order.  
Thank you for this opportunity to quote.

Sincerely,

Martin Donohue  
Project Manager

*Service is our reputation.*

000990

Not Reported in A.2d
26 Conn. L. Rptr. 17
(Cite as: 1999 WL 1120373 (Conn.Super.))

Page 12

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Riccardo I. AMBROGIO, D.M.D.,
v.
BEAVER ROAD ASSOCIATES, et al.

No. CV 960475509S.

Nov. 19, 1999.

Opinion Title:Memorandum of Decision

WOLLENBERG.

*1 The first issue before this court is whether to preclude expert testimony as to damages for lost profits. The relevant facts are as follows. On August 31, 1992, Riccardo I. Ambrogio, an oral surgeon, entered into a lease agreement to rent office space from Beaver Road Associates. On September 11, 1992, Ambrogio, pursuant to a written agreement, contracted with Paul DiMascio Construction Company (DiMascio) to act as general contractor to renovate his newly leased medical/dental facility. The renovation project included the installation of vinyl flooring in two rooms that Ambrogio intended to use as surgical operating rooms. As general contractor, DiMascio in turn contracted with Z-Florz, Inc., to act as the vinyl flooring subcontractor.

As of November 1992, the vinyl flooring was installed in Ambrogio's two surgical office suites. Ambrogio began his practice on the leased premises on November 16, 1992. Within months of installation, the vinyl flooring allegedly began bubbling up in areas, creating irregularities and warpings, causing moisture and glue from underneath the flooring to percolate and seep up to the surface through the seams of the flooring. Ambrogio allegedly expended efforts on constant cleaning and maintenance of the floors. In mid-1993, Ambrogio allegedly consulted with Z-Florz, Inc. to identify the problem and a possible remediation plan. Soon thereafter, Ambrogio discussed the seepage problem with Beaver Road Associates and its general partners, which allegedly refused to assume responsibility for the seepage problem unless Ambrogio proved it resulted from improper ventilation of the concrete.

Ambrogio alleges that the seepage problem continues to this date and has existed continuously since late 1992. He further alleges that, despite his best efforts to mitigate the effects of the seepage problem, the effects of moisture and water on his surgical room floor rendered one of his office suites unfit for its intended use as a surgical operating room. As such, Ambrogio alleges that since November of 1995 he has ceased using one of the office suites as a surgical operating room.

On August 12, 1996, Ambrogio filed suit for damages sustained from the alleged seepage problem emanating from the poor installation of the vinyl flooring on the concrete slab located underneath the floor of the office suites. Ambrogio's seven-count complaint alleges claims for breach of contract, fraudulent nondisclosure, civil conspiracy, negligence, and violation of the Connecticut Unfair Trade Practices Act against Beaver Road Associates, its general partners, Z-Florz, Inc., and DiMascio. Due to withdrawals and settlements, the general contractor, DiMascio, is the only remaining defendant in this action.

Ambrogio's fifth count alleges a breach of contract action against DiMascio. Particularly, Ambrogio alleges that pursuant to their contractual agreement, DiMascio was responsible for the proper installation of the flooring. He alleges that DiMascio breached its contractual duty by failing to adequately test the concrete slab to determine its suitability for the flooring, by failing to supervise, inspect and direct the installation of the flooring and by failing to notify Ambrogio of the seepage problem that would ensue. Additionally, Ambrogio alleges that DiMascio's "breach of its contractual duty resulted in Ambrogio's **foreseeable damages** set forth in the First Count [and that DiMascio] did **foresee** or should reasonably have **foreseen** that all the items of **damage** would occur due to its failure to properly supervise, inspect and direct the installation of the flooring." (Complaint, Count Five, 33-34.)

*2 To substantiate his lost profit claim, Ambrogio filed two expert witness disclosures on July 8, 1998. Ambrogio identified Michael C. Matzkin, D.D.S. as an expert who would testify, inter alia, as to the projected future growth of Ambrogio's practice. Ambrogio also disclosed Conrad A. Kappal, CPA, CFE, as an expert who would testify as to the value of damages incurred by Ambrogio, including, but not

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

limited to, loss of patients, loss of patient referrals, loss of future business growth, and lost earnings.

By way of motion in limine, DiMascio moves this court to decide whether Ambrogio and his two above named experts should be precluded from testifying or offering any documents into evidence to prove that Ambrogio sustained damages in the form of loss of patients, loss of patient referrals, and loss of business growth resulting from DiMascio's alleged breach of the building agreement. As such, the court must determine whether lost profits in the form of loss of patients, loss of patient referrals, and loss of business growth were reasonably foreseeable as a measure of damages by Ambrogio and DiMascio at the time they entered into their contract.

The second issue before this court is whether evidence concerning a party's settlement with a former defendant can be admitted in the trial of the matter against a codefendant on the ground that the settlement constitutes a set-off. The relevant facts pertaining to this issue are as follows. On November 2, 1999, DiMascio filed a request for leave to amend its amended answer dated April 27, 1999, to add a set-off as a special defense. In response, on November 9, 1999, Ambrogio filed a motion in limine to preclude DiMascio from introducing at trial any evidence involving prior settlement agreements or releases with former defendants in this action. On November 12, 1999, Ambrogio also filed an objection and supporting memorandum of law to DiMascio's request for leave to amend answer. Ambrogio objects to DiMascio's request on the ground that the purported special defense improperly pleads the receipt of settlement funds from former defendants as set-offs. Later the same day that Ambrogio filed his objection to the request to amend answer, DiMascio filed a reply to Ambrogio's objection to the request and a response to Ambrogio's motion in limine.

For the reasons cited below, this court grants both motions in limine to preclude evidence at trial showing that Ambrogio lost patients, lost patient referrals, or lost business growth opportunities and evidence of settlement or release of claims with former defendants of this action.

1. DiMascio's Motion in Limine

"The judicial authority to whom a case has been assigned for trial may in its discretion entertain a motion in limine made by any party regarding the admission or exclusion of anticipated evidence ... The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding." Practice Book § 15-3.

*3 "For breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." (Internal quotation marks omitted.) *Levesque v. D & M Builders, Inc.*, 170 Conn. 177, 181, 365 A.2d 1216 (1976). "In cases involving a breach of a construction contract damages are measured either by the reasonable cost of construction and completion in accordance with the contract or by the diminished value of the property if construction and completion in accordance with the contract would involve unreasonable economic waste." *MaCahill v. Town & Country Associates, Ltd.*, 185 Conn. 37, 41, 440 A.2d 801 (1981). "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Internal quotations marks omitted.) *Levine v. Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995). "Where there is definite contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson and Peck, Inc. v. Harbor Marine Contracting Corp.*, 203 Conn. 123, 131, 523 A.2d 1266 (1987).

"The question whether expected profits are recoverable as damages for breach of contract has been a controversial one in the law. The earlier tendency was generally to regard such profits as remote or as speculative or as not a part of the contract. But the modern view is that such profits may be recovered where they were part of the contract-- where an engagement to pay them can be found in the terms of the contract or implied from the circumstances in the light of which it was made--and where they are not in fact remote or speculative but are proved to a reasonable certainty." (Internal quotation marks omitted.) Williston, Contract (3rd Ed.1968 & Supp.1999), § 1345, p. 234.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

"**Damages** are not recoverable for loss that the party in breach did not have reason to **foresee** as a probable result of the breach when the contract was made ... Loss may be **foreseeable** as a probable result of a breach because it follows from the breach (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know ... *A court may limit damages for foreseeable loss* by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise *if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation.*" (Emphasis added.) 3 Restatement (Second), contracts § 351 (May 17, 1979) (1981).

**\*4** "[T]he requirement of foreseeability is a more severe limitation of liability than is the requirement of substantial or 'proximate' cause in the case of an action in tort or for breach of warranty." *Id.*, 136. "It is not always in the interest of justice to require the party in breach to pay damages for all of the foreseeable loss that he has caused. There are unusual instances in which it appears from the circumstances either that the parties assumed that one of them would not bear the risk of a particular loss or that, although there was no such assumption, it would be unjust to put the risk on that party. One such circumstance is an extreme disproportion between the loss and the price charged by the party whose liability for that loss is in question. The fact that the price is relatively small suggests that it was not intended to cover the risk of such liability. Another such circumstance is an informality of dealing, including the absence of a detailed written contract, which indicates that there was no careful attempt to allocate all of the risks. The fact that the parties did not attempt to delineate with precision all of the risks justifies a court in attempting to allocate them fairly ... Typical examples of limitations imposed on **damages** under this discretionary power involve the denial of recovery for loss of profits and the restriction of **damages** to loss incurred in reliance on the contract. Sometimes these limits are covertly imposed, by means of an especially demanding requirement of **foreseeability** or of certainty. The rule stated in this Section recognizes that what is done in such cases is the imposition of a limitation in the interests of justice." *Id.*, 141-42.

"[The Connecticut Supreme Court] has consistently applied the general damage formula of *Hadley v. Baxendale* to the recovery of lost profits for breach of contract, and it is [the Court's] rule that unless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." (Internal quotation marks omitted.) *West Haven Sound Development Corp. v. West Haven,* 201 Conn. 305, 320, 514 A.2d 734 (1986). (On appeal after remand, the Supreme Court in *West Haven Sound Development Corp. v. West Haven,* 207 Conn. 308, 541 A.2d 858 (1988), affirmed trial court's jury instruction on the evaluating plaintiff's business following breach.)

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may *fairly* and *reasonably* be considered either *arising naturally,* i.e., according to the usual course of things, from such breach of contract itself, or such as may *reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.* Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract, For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them. Now the above principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract." (Emphasis added.) *Hadley v. Baxendale,* 156 Eng. Rep. 145 (Court of Exchequer, 1854).

**\*5** "*Hadley* lays down two rules: (1) losses must be of the type usually resulting from the breach of like contracts, or (2) if there are special circumstances, and the damages arise as a result of those special circumstances, recovery can only be allowed if the defaulting party was aware of the special circumstances at the time of entering into the contract. Obviously, as formulated, this rule is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

sufficient to be applicable to every breach of contract case ... In Connecticut the rule of *Hadley* has been the law since at least the early 1900s and continues today." *Thames Shipyard & Repair Co. v. Willametz,* 37 Conn.Supp. 19, 22-23, 428 A.2d 1143 (1978), aff'd, 184 Conn. 213, 439 A.2d 948 (1981).

Applying the rule in *Hadley* to the present case, the court concludes that DiMascio could not reasonably have contemplated lost profits as a measure of damages in the event he were to breach the building agreement. Also, lost patients, lost patient referrals, and loss of business growth are not losses of the type usually resulting from a general contractor's breach of contract for failure to properly inspect, direct and supervise a subcontractor's installation of flooring. The contract does not state that DiMascio was aware of special circumstances at the time of contracting, and, therefore, DiMascio cannot reasonably be supposed to have foreseen liability for lost profits in the event of breach. The widely accepted case of *Hadley v. Baxendale* supports this court's preclusion of evidence on the ground that Ambrogio's alleged loss of patients, loss of patient referrals, and loss of business growth was not reasonably foreseeable by DiMascio at the time of contracting.

2. Ambrogio's Motion in Limine

Practice Book § 10-54 provides that "[i]n any case in which the defendant has either in law or in equity or in both a counterclaim, or right of set-off, against the plaintiff's demand, the defendant may have the benefit of any such set-off or counterclaim by pleading the same as such in the answer, and demanding judgment accordingly; and the same shall be pleaded and replied to according to the rules governing complaints and answers." (See General Statutes § § 52-139 to 52-142.) In examining General Statutes § § 52-139 to 52-142, DiMascio does not have a statutory legal right to set-off.

General Statutes § 52-216a provides the following: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasor, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to the jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

*6 The Connecticut Supreme Court in *Bennett v. Automobile Ins. Co. of Hartford,* 230 Conn. 795, 804, 646 A.2d 806 (1994), stated that "General Statutes § 52-216a expressly prohibits the introduction of evidence concerning settlement agreements or releases injury trials. That statute was enacted to ensure that jury verdicts will not be influenced by the knowledge of a partial settlement." (Internal quotation marks omitted.)

"Set-offs can be based either in law or in equity." *Godiksen v. Miller,* 6 Conn.App. 106, 109, 503 A.2d 617 (1986). "A legal set-off, in an action brought to recover on a debt, is controlled by General Statutes § 52-139. That statute provides in part that '[i]n any action brought for the recovery of debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other.' Here, there was no claim that the plaintiff was in debt to the defendant. There was, therefore, no 'mutual debt' and no possibility of a legal set-off." *Id.,* 109 n. 4, 503 A.2d 617. "A condition precedent to its [the application of General Statutes § 52-139] is that it shall be in answer to a suit on a debt. The plaintiff's action was not a suit on a debt but one for strict foreclosure. It follows that ... [the defendant's] right is based on equitable principles." *Savings Bank of New London v. Santaniello,* 130 Conn. 206, 211, 33 A.2d 126 (1943). Similarly, in the present case, Ambrogio's action is not based on payment of a debt, and, thus, set-off is not appropriately pleaded as a special defense.

In light of the legislature's mandate in the controlling statutory authority cited above and the court's binding and authoritative precedent, this court will not permit evidence of settlements with former defendants to be admitted in evidence at trial under the misnomer of set-offs.

This court hereby grants DiMascio's motion in limine to preclude evidence of loss of patients, loss of patient referrals and loss of business growth, since

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1120373, *6 (Conn.Super.))

Page 16

these **damages** were not reasonably **foreseeable** by the defaulting party at the time of contracting. Further, this court grants Ambrogio's motion in limine to preclude evidence relating to Ambrogio's settlements and/or releases with former defendants in this action.

1999 WL 1120373 (Conn.Super.), 26 Conn. L. Rptr. 17

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works