FILED
Mar 10  9 42 AM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------x
JAMESON ENTERPRISES, INC. d/b/a       :
JAMESON'S PUB AND RESTAURANT and      :
PATRICK J. KENNEDY                    :
                                      :
        Plaintiffs                    :   CASE NO. 3:02CV409 (MRK)
                                      :
    vs.                               :
                                      :   OBJECTION TO
                                      :   DEFENDANT'S MOTION
                                      :   IN LIMINE
                                      :
B.C. FLYNN CONTRACTING CORP.Q         :
a/k/a B.C. FLYNN CONTRACTING CORP.d/b/a :
FLYNN CONTRACTING CORPORATION.        :
                                      :   MARCH 1, 2004
        Defendant.                    :
-----------------------------------------------------------x

Plaintiffs respectfully object to defendant's *Motion in Limine* ("motion") seeking to preclude evidence of plaintiff's lost profits on the grounds that the same were not foreseeable. Specifically, defendant claims it is not liable for lost profits as a result of it's breach of contract in the installation of fire-wrap at the plaintiff's premises when defendant did not know, and had no reason to know, that the plaintiff would be evicted if defendant breached the contract or failed to remediate the code defect within the time allowed.

To the contrary, plaintiffs allege that the defendant *did know* that the plaintiff would be evicted if they improperly performed, or failed to perform, within the time allowed. Nevertheless, "the determination as to whether future profits were within the contemplation of the parties when contracting necessarily turns on the specific facts established at trial." Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1362 (7th Cir.1996). As such,

the resolution of the defendant's motion requires, at least, an evidentiary hearing to resolve the disputed issues of fact *vis- a- vis* forseeability.

In the first instance, the case cited by defendant and annexed as Exhibit B to its *Memorandum of Law in Support of Motion in Limine*, <u>Ambrigio v. Beaver Road Associates,</u> 1999 WL 1120373, 26 Conn. L. Rptr. 17, Conn. Super., Nov 19, 1999, has been overruled by the Supreme Court's decision in the same case, <u>Ambrigio v. Beaver Road Associates,</u> 267 Conn. 148, 836 A.2d 1183 (2003).[1]

In <u>Ambrigio v. Beaver Road Associates,</u> 1999 WL 1120373, 26 Conn. L. Rptr. 17, Conn. Super., Nov 19, 1999, the trial court granted the defendant's motion in limine "to preclude evidence of loss of patients, loss of patient referrals and loss of business growth, since these damages were not reasonably foreseeable by the defaulting party at the time of contracting." The Appellate Court reversed, 71 Conn. App. 576 (2002), holding *inter alia*, that "without having the complete contract, the court could not determine that the parties did not contemplate lost profits as a measure of damages in this case. Accordingly, the trial court improperly concluded that lost profits were not allowable." Id at 584. Upon certification to the State Supreme Court, 261 Conn. 943, 808 A.2d 1136 (2002), the Court affirmed the Appellate Court's reversal and held that the plaintiff was not precluded, as a matter of law, from recovering lost profits for the contractor's breach of construction contract, and that the trial court abused its discretion in deciding the factual issue of whether lost profits were within the reasonable parties'

---

[1] Copy annexed as Exhibit A.

contemplation when they entered into the contract, which issue was not before the trial court on the motion in limine. Ambrigio , supra, 267 Conn. 148 (2003).

While the issue of foreseeability is now properly before this court on defendant's motion, the following reasons and grounds require denial of the motion, after evidentiary hearing.

"It is our rule that '[u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach.'" West Haven Sound Development Corp. v. West Haven, supra, at 320, 514 A.2d 734, quoting Kay Petroleum Corp. v. Piergrossi, 137 Conn. 620, 624, 79 A.2d 829 (1951)." Ambrigio, supra, 267 Conn. at 155. "The usual recovery for breach of a contract is the contract price or *the lost profits* therefrom." (Emphasis added.) Gazo v. Stamford, 255 Conn. 245, 265, 765 A.2d 505 (2001).

In Ambrigio, supra, the Supreme Court held that lost profits are not precluded as a matter of law in Connecticut.[2] The Court said, in pertinent part:

> "Section 1363 of Professor Williston's treatise, entitled, 'Contracts for Particular Service; Building Contracts,' provides in relevant part: 'Where the contractor fails to keep his agreement, the measure of the employer's damages ... is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance.... If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed.... *But consequential or special damages may also be recovered when they were foreseeable when the contract was made.*' (Emphasis added.) 11 S. Williston, supra, § 1363, pp. 344-47." Ambrigio, supra, 267 Conn. at 159, fn 7.

---

[2] In so doing, the Supreme Court also distinguished the other case relied upon by defendant herein, Levesque v. D & M Builders, Inc., 170 Conn. 177, 181 (1976). See Ambrigio, 267 Conn. at 157-8.

3

The defendant makes much of its letter appended as Exhibit A to its *Memorandum of Law*, arguing that the same shows that defendant did not reasonably foresee or contemplate lost profits as possible damages for improper performance. However, the argument misses the mark for three specific reasons.

First, the engagement letter was drafted by the defendant and, as such, it is construed against defendant. Hansen v. Ohio Casualty Ins. Co., 239 Conn. 537, 544, 687 A.2d 1272 (1996). Had the defendant wanted to limit or apportion liability for lost profits, it could have done so but did not. Second, there is no definitive contract language, one way or the other, relating to the issue of precluding or allowing damages for plaintiffs' lost profits.[3] As such, the parol evidence rule does not apply, Lester v. Resort Camplands International, Inc., 27 Conn. App. 59, 65, 605 A.2d 550 (1992), and testimony concerning what was told or made known to the defendant concerning eviction is allowable and relevant to what the defendant knew and, therefore, what was within the ambit of foreseeable loss. Third, the issue of forseeability of damages in this case is not solely limited to the damages for breach of contract, inasmuch as the complaint also sounds in negligence, misrepresentation and unfair trade practices.

---

[3] "'It appears that the court, in applying the principles of *Hadley v. Baxendale,* supra, 9 Ex. at 354, interpreted the language of the contract to preclude the awarding of lost profits. In its memorandum of decision, the court stated that [i]t is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties.... Where there is definite contract language, the determination of what the parties intended by their contractual commitments is a question of law. We have noted that [w]here ... there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." (Internal quotation marks omitted.) *Wren v. MacPherson Interiors, Inc.,* 69 Conn.App. 349, 354, 794 A.2d 1043 (2002). That, however, is not the case here." (Internal citations omitted) Ambrigio v. Beaver Road Associates, 71 Conn. App. 576, 583 (2002).

And while defendant takes the position that the relatively small contract price, in comparison to the large amount of lost profits claimed as damages herein, shows that defendant did not intend to cover such losses, what defendant fails to appreciate is the fact that, as an experienced going concern as a fire wrap installer, it knew that failure of its installation to conform to code could result in the Fire Marshal closing the plaintiffs' establishment, irrespective of eviction, for at least some period of time. The letter annexed hereto as Exhibit B shows that the defendant knew that the Fire Marshal required code compliance. For this reason, the allegation by defendant that it had no reason to know that its improper performance could result in lost profits due to a cessation of plaintiffs' business, for any period of time, is disingenuous at best.

In sum, query whether, if the plaintiffs' business burned down as a result of the defective or improper installation alleged, the defendant would be claiming that it was not foreseeable that the plaintiff would lose profits (which would otherwise have been realized, during the period of reconstruction) as a result thereof? The answer is "no" and for that reason, as well as testimony to be proffered showing that defendant knew that plaintiff would be evicted if it failed to or improperly performed, the motion must be denied.

THE PLAINTIFFS
JAMESON ENTERPRISES, INC. D/B/A
JAMESON'S PUB AND RESTAURANT
PATRICK J. KENNEDY,

BY _____
   Philip Russell
   71 Lewis Street
   Greenwich, CT  06830
   (203) 661-4200
   (203) 661-3666
   CT  13127

## **CERTIFICATION**

The undersigned hereby certifies that a copy hereof was sent by first class mail, postage pre-paid, this 1st day of March, 2004, to:

Paul Ryan, Esq.
Welby, Brady & Greenblatt, LLP
Westchester Financial Center
50 Main Street
White Plains, N.Y. 10606


_____
Philip Russell

836 A.2d 1183
(Cite as: 267 Conn. 148, 836 A.2d 1183)

Page 1

**H**

Supreme Court of Connecticut.

Riccardo I. **AMBROGIO**
v.
BEAVER ROAD ASSOCIATES et al.

No. 16853.

Argued Sept. 9, 2003.
Decided Dec. 30, 2003.

**Background:** Oral surgeon brought action against contractor for breach of construction contract based on defective installation of flooring. The Superior Court, Judicial District of New Britain, Wollenberg and Shapiro, JJ., granted contractor's motion in limine and granted surgeon's motion for summary judgment as to liability only. Surgeon appealed. The Appellate Court, 71 Conn.App. 576, 803 A.2d 338, reversed in part and remanded. Contractor filed petition for certification to appeal.

**Holdings:** The Supreme Court, Vertefeuille, J., held that:
(1) oral surgeon was not precluded, as a matter of law, from recovering lost profits for contractor's breach of construction contract, and
(2) trial court abused its discretion in deciding factual issue of whether lost profits were within reasonable parties' contemplation when they entered into contract, which issue was not before trial court on motion in limine.

Affirmed.

West Headnotes

**[1] Appeal and Error** ⌾842(1)
30k842(1) Most Cited Cases

The Supreme Court's review of questions of law is plenary.

**[2] Damages** ⌾120(1)
115k120(1) Most Cited Cases

As a general rule in breach of contract cases, the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.

**[3] Damages** ⌾40(2)
115k40(2) Most Cited Cases

Unless they are too speculative and remote, prospective profits are allowable as an element of damages whenever their loss arises directly from and as a natural consequence of the breach of a contract.

**[4] Damages** ⌾123
115k123 Most Cited Cases

Oral surgeon was not precluded, as a matter of law, from recovering lost profits for contractor's breach of construction contract, arising from alleged defective installation of flooring in surgeon's offices.

**[5] Damages** ⌾208(1)
115k208(1) Most Cited Cases

Trial court abused its discretion in deciding factual issue of whether lost profits were within reasonable contemplation of oral surgeon and contractor at the time they entered into construction contract, which issue was not before trial court on motion in limine, which limited trial court's inquiry to whether, as a matter of law, lost profits could be included in measure of damages for breach of construction contract.

**[6] Pretrial Procedure** ⌾3
307Ak3 Most Cited Cases

A party, through a motion in limine, may implore the court to decide a question of law, as well as some preliminary questions of fact.

**[7] Jury** ⌾12(3)
230k12(3) Most Cited Cases

Although broad, the discretion of a trial judge must yield to a litigant's constitutional right to have factual issues resolved by the jury.

**[8] Damages** ⌾208(1)
115k208(1) Most Cited Cases

The question whether a particular element of loss was reasonably foreseeable is a question of fact.
**1184 *150 Thomas P. Chapman, for the appellant (defendant Paul DiMascio Construction

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

836 A.2d 1183
(Cite as: 267 Conn. 148, 836 A.2d 1183)

Page 2

Company, Inc.).

Barbara A. Frederick, with whom, on the brief, were Richard S. Order and Laura F. Baldini, Hartford, for the appellee (plaintiff).

BORDEN, NORCOTT, PALMER, VERTEFEUILLE and ZARELLA, Js.

VERTEFEUILLE, J.

In this certified appeal, the defendant, [FN1] Paul DiMascio Construction Company, Inc., appeals from the judgment of the Appellate Court reversing the trial court's summary judgment rendered in favor of the plaintiff, Riccardo I. **Ambrogio**, as to liability, but awarding no damages. *Ambrogio v. Beaver Road Associates,* 71 Conn.App. 576, 803 A.2d 338 (2002). We conclude that the Appellate Court properly determined that the plaintiff was not precluded, as a matter of law, from recovering lost profits for the defendant's breach of a construction contract with the plaintiff. Accordingly, we affirm the judgment of the Appellate Court.

> FN1. The other defendants named in the plaintiff's complaint, Beaver Road Associates, Rosario S. Mangiafico, Robert H. Tabshey, John Palazzo and Z-Florz, are not parties to this appeal. Thus, we refer herein to Paul DiMascio Construction Company, Inc., as the defendant.

*151 The Appellate Court set forth the following relevant facts and procedural history of this case. "The plaintiff, an oral surgeon, leased office space at 20-30 Beaver Road in Wethersfield. The lease, which was for a period of ten years with two options to renew for additional terms of five years, stated that the premises were to be used for a dental/oral and maxillofacial surgery practice in accordance with the normal work program of [the **1185 plaintiff] and/or associates and for no other purposes.

"Shortly after signing the lease, the plaintiff entered into an agreement with the defendant, a general contractor, for the construction of his office. As part of the contract, the defendant agreed to secure and provide ... all the materials necessary and perform or cause to be performed all the work necessary for the completion of improvements to the Premises ... in accordance with the General Specifications and that [a]ll work shall be done in a good and workmanlike manner, using experienced labor and first-quality materials as per the specifications.

"The defendant thereafter contracted with Z-Florz, Inc., to install the flooring in the plaintiff's two surgical rooms. The floors, Forbo Forshaga AB smaragd sheet vinyl flooring with Forbo's heat welding system, were to be installed in accordance with the manufacturer's instructions to ensure coverage under the manufacturer's five year warranty. Z-Florz, Inc., installed the surgical flooring, and the plaintiff opened his practice on November 16, 1992.

"Several months after opening his practice, the plaintiff noticed moisture seepage, slippery conditions, offensive odors and bubbling in the flooring in the surgical areas of the office. As a result, unsafe and unhealthy conditions caused the plaintiff to close one of the surgical rooms.

*152 "The plaintiff subsequently discovered that improper ventilation of the concrete slab under the flooring had caused the seepage problem. Attempts by the plaintiff to rectify the condition of the surgical room floors were to no avail and the plaintiff brought this action. He claimed that the defendant had breached its contractual duty by failing to properly supervise the installation of the flooring in his office.

"After filing this action, the plaintiff notified the defendant that he intended to call two expert witnesses to testify during the trial, Michael C. Matzkin, a dentist, and Conrad A. Kappel, a certified public accountant. Matzkin and Kappel were to testify as to the projected growth of the plaintiff's practice and the profits that were lost as a result of the defective installation of the flooring in the surgical rooms. Prior to the date the trial was to begin, the defendant filed a motion in limine seeking to preclude the plaintiff from introducing any evidence which [purports] to show that the plaintiff lost patients, lost patient referrals or lost business growth opportunities as elements of his damages." (Internal quotation marks omitted.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

836 A.2d 1183
(Cite as: 267 Conn. 148, 836 A.2d 1183)

Page 3

*Ambrogio v. Beaver Road Associates,* supra, 71 Conn.App. at 577- 79, 803 A.2d 338.

At oral argument on the motion in limine before the trial court, *Wollenberg, J.,* the defendant contended that "[l]ost business and loss of business opportunities are not included in the measure of damages for the breach of a construction contract." (Internal quotation marks omitted.) Id., at 579, 803 A.2d 338. The plaintiff disagreed, arguing that lost profits were an appropriate measure of damages for breach of a construction contract. Neither party offered evidence or testimony at the hearing. Following the hearing, the trial court granted the defendant's motion in limine, concluding, first, that lost profits can be an appropriate measure of damages for breach of a construction contract when such damages were within the contemplation of the parties at the time they made *153 the contract. The trial court further determined that lost profits were *not* recoverable in this case, however, because the defendant reasonably could not have contemplated such damages at the time the parties entered into the contract.

**1186 Subsequently, the plaintiff moved for summary judgment against the defendant as to liability for breach of the construction contract. The trial court, *Shapiro, J.,* granted the motion for summary judgment and rendered judgment thereon but awarded no damages to the plaintiff due to the preclusive effect of the prior ruling granting the motion in limine. [FN2]

> FN2. The only damages that the plaintiff sought in this action were lost profits. The granting of the defendant's motion in limine therefore precluded the plaintiff from obtaining an award for any damages.

The plaintiff appealed from the trial court's judgment to the Appellate Court, claiming that, in granting the motion in limine, the trial court improperly had resolved a factual issue not before it, i.e., whether the parties reasonably contemplated lost profits as damages when they entered into the contract. The Appellate Court reversed in part the judgment of the trial court, concluding that, as a matter of law, lost profits can be awarded for breach of a construction contract, but further concluding that the trial court exceeded its authority by deciding that, as a factual matter, the plaintiff in the present case could not recover lost profits because they were not within the contemplation of the parties. Id., at 584, 803 A.2d 338. The Appellate Court therefore remanded the case for a hearing in damages. [FN3] Id.

> FN3. We construe the Appellate Court's remand to include the requirement that the plaintiff prove, not only the amount of the lost profits, but that such profits were within the reasonable contemplation of the parties when they entered into the contract.
> Indeed, the plaintiff does not contend otherwise.

We thereafter granted the defendant's petition for certification to appeal limited to the following issue: *154 "Did the Appellate Court properly conclude that the plaintiff was not precluded, as a matter of law, from recovering lost profits for breach of his construction contract with the defendant?" *Ambrogio v. Beaver Road Associates,* 261 Conn. 943, 944, 808 A.2d 1136 (2002). This appeal followed.

On appeal to this court, the defendant claims that the Appellate Court improperly reversed the trial court's judgment, and challenges both aspects of the Appellate Court's ruling. First, the defendant argues that the Appellate Court misstated the law of damages relating to recovery of lost profits. Specifically, the defendant claims that the Appellate Court failed to recognize an established exception to the general rule of compensatory damages that precludes recovery of lost profits in a breach of contract action stemming from a construction contract. Second, the defendant contends that the Appellate Court incorrectly determined that, as a matter of law, the trial court exceeded its authority by precluding evidence of lost profits in the present case on the ground that lost profits were not within the reasonable contemplation of the parties. [FN4] We are not persuaded by either of the defendant's claims.

> FN4. The defendant also claims that awarding lost profits in this case would result in economic waste and would offend public policy. In making this argument,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the defendant maintains that awarding the plaintiff lost profits effectively would "hold a contractor liable for years and years of lost business growth ... when a simpler and more appropriate remedy would be to pay for the cost of having the floors fixed." This claim is premature, because it presumes an award of lost profits over an extended time period that has not yet been made. No trial court has, as of yet, determined for how many months or years the plaintiff is entitled to recover his lost profits. Therefore, whether the award will constitute economic waste is a question that cannot be determined on the present record.

[1] We begin by setting forth the applicable standard of review. Both claims **1187 raised by the defendant present questions of law. Accordingly, our review is plenary. *DeLeo v. Nusbaum,* 263 Conn. 588, 593, 821 A.2d 744 (2003).

[2][3] *155 As the defendant acknowledges, our case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims. "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." (Internal quotation marks omitted.) *West Haven Sound Development Corp. v. West Haven,* 201 Conn. 305, 319, 514 A.2d 734 (1986). The Restatement (Second) of Contracts divides a defendant's recovery into two components: (1) direct damages, composed of "the loss in value to him of the other party's performance caused by its failure or deficiency"; 3 Restatement (Second), Contracts § 347(a) (1981); plus, (2) "any other loss, including incidental or consequential loss, caused by the breach...." Id., § at 347(b). Traditionally, consequential damages include "any loss that 'may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself.' " *West Haven Sound Development Corp. v. West Haven,* supra, 201 Conn. at 319, 514 A.2d 734, quoting *Hadley v. Baxendale,* 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854). Although there is no unyielding formula by which damages are calculated, "it is our rule that '[u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach.' " *West Haven Sound Development Corp. v. West Haven,* supra, at 320, 514 A.2d 734, quoting *Kay Petroleum Corp. v. Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829 (1951).

[4] Although the defendant acknowledges Connecticut's practice of allowing recovery of lost profits in most breach of contract cases, it nonetheless maintains that the Appellate Court overlooked a salient exception pertaining to construction contracts. Specifically, the *156 defendant relies on two cases, *M.J. Daly & Sons, Inc. v. New Haven Hotel Co.,* 91 Conn. 280, 287, 99 A. 853 (1917), and *Levesque v. D & M Builders, Inc.,* 170 Conn. 177, 180-81, 365 A.2d 1216 (1976), to support its contention that the exclusive measure of damages for breach of a construction contract is (1) the reasonable cost of repairs, or (2) the difference between the value of the product contracted for and the value of the product received by the plaintiff. We disagree with the defendant's contention.

We first note that both this court and the Appellate Court previously have upheld damage awards that included lost profits for breach of contract claims arising out of construction related disputes. For example, in *Tompkins, Inc. v. Bridgeport,* 94 Conn. 659, 110 A. 183 (1920), this court affirmed the trial court's award of damages, including lost profits, for a breach of contract claim stemming from a contractor's wrongful termination of a contract to build a bridge. Subsequently, in *Gordon v. Indusco Management Corp.,* 164 Conn. 262, 277, 320 A.2d 811 (1973), an action to recover damages resulting from a breach of contract and from the failure of the defendant to construct a restaurant outlet store on his land pursuant to a written lease, this court remanded the case for a hearing in damages to determine the proper amount of lost profits that the plaintiff could recover. The Appellate Court similarly has upheld damage awards for lost profits in the construction context. See **1188*Amwax Corp. v. Chadwick,* 28 Conn.App. 739, 745, 612 A.2d 127 (1992) (upholding lost profit award for breach of oral lease occasioned by defendant's failure to repair roof and construct sanitary sewer facilities); *Wilson v. Kapetan, Inc.,* 25 Conn.App.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

529, 534, 595 A.2d 369 (1991) (lost profits, if properly claimed, could be recovered in breach of construction contract action); *157*Steeltech Building Products, Inc. v. Edward Sutt Associates, Inc.,* 18 Conn.App. 469, 471- 72, 559 A.2d 228 (1989) (awarding lost profits for breach of contract premised on withdrawn construction bid). The defendant did not address any of these cases in its brief. Instead, the defendant focused exclusively on this court's decisions in *M.J. Daly & Sons, Inc.,* and *Levesque,* which, although articulating an exception to the general rule of damages in construction cases, are confined to the calculation of direct damages and do not address in any way an award of lost profits.

In *M.J. Daly & Sons, Inc.,* the plaintiff subcontractor, whose contract was terminated by the defendant building owner when the work was near completion, brought an action against the owner to recoup the unpaid balance due based on the contract price. *M.J. Daly & Sons, Inc. v. New Haven Hotel Co.,* supra, 91 Conn. at 283, 99 A. 853. This court rejected the contention that the plaintiff's damages should be measured by the reasonable value of its work, stating that "the well-established rule, in this and other jurisdictions, is that the reasonable value for which recovery may be had in cases of substantial performance of building contracts, is to be ascertained with reference to the contract price and by deducting from that price such sum as ought to be allowed for the omissions and variations." Id., at 287, 99 A. 853. The court acknowledged that this rule of damages for building contracts is an exception to that for contracts generally. Id.

In *M.J. Daly & Sons, Inc.,* however, we did not address lost profits as an element of damages for breach of a construction contract and we do not read its language as precluding such damages irrespective of the reasonable expectations of the parties.

The defendant's reliance on *Levesque* is equally unavailing. In *Levesque,* the defendant contractor challenged a damage award assessed against him for constructing the plaintiff's house too close to the street *158 line, in violation of both the contract and municipal zoning regulations. *Levesque v. D & M Builders, Inc.,* supra, 170 Conn. at 179-80, 365 A.2d 1216. The trial court determined that the proper measure of damages was the cost of relocating the house. Id., at 180, 365 A.2d 1216. This court reversed and remanded the case for a hearing in damages stating that, "[f]or a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract ... or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received...." (Internal quotation marks omitted.) Id., at 181, 365 A.2d 1216. These formulations, the defendant maintains, are the proper, and exclusive, measure of damages in any case for breach of a construction contract.

*Levesque* simply does not support the defendant's claim. First, as in *M.J. Daly & Sons, Inc.,* this court did not state that the formulation of damages was the *exclusive* measure of damages for breach of any and all construction contracts. Second, no claim for lost profits was made in *Levesque* and the court therefore did not address lost profits as an element of damages. Third, *Levesque* concerned only the appropriate **1189 measure of *direct* damages for breach of a construction contract and this court explicitly limited its review to the issue of direct damages. Indeed, this court in *Levesque* pointed out that, although the trial court awarded both direct damages, consisting of the cost of relocating the house, and consequential damages, being the plaintiffs' living expenses during the relocation, the defendant had not challenged the award of consequential damages. [FN5] Id., at 180, n. 2, 365 A.2d 1216. Accordingly, the court confined *159 its analysis to direct damages. With regard to consequential damages generally, this court cited 1 Restatement, Contracts § 346(1)(b) (1932) [FN6] and 11 S. Williston, Contracts (3d Ed. Jaeger 1968) § 1363, [FN7] both of which *support* damage awards encompassing lost profits for breach of contracts generally and, specifically, in the construction context, depending on the facts of the case. *Levesque v. D & M Builders, Inc.,* supra, 170 Conn. at 180, n. 2, 365 A.2d 1216. We therefore conclude that the Appellate Court properly determined that the plaintiff was not precluded, as a matter of law, from recovering lost profits for the defendant's breach of the construction contract.

FN5. In *Levesque,* this court stated: "The

836 A.2d 1183
(Cite as: 267 Conn. 148, 836 A.2d 1183)

Page 6

defendant has not directly attacked the propriety of including as an element of special or consequential damages the probable living expenses of the plaintiffs for the period when the relocation of the house, as projected by the court, is taking place. For the general rule on foreseeable special or consequential damages in contract cases, see Restatement, 1 Contracts 346(1)(b) [1932]; 11[S.] Williston, Contracts (3d Ed. Jaeger [1968]) §§ 1363, 1344, 1344A." *Levesque v. D & M Builders, Inc.*, supra, 170 Conn. at 180, n. 2, 365 A.2d 1216.

FN6. Section 346 of the Restatement of Contracts (1932), entitled, "Damages for Breach of a Construction Contract," provides in relevant part: "(1) ... (b) For any delay in completion fairly chargeable to the builder, the plaintiff can get judgment for the value of the use of the product, if it was being constructed for use, and for the decline in sale value, if it was being constructed for sale, in either case determined in accordance with the rules stated in § 331...." Section 331(1) of the Restatement, supra, provides: "Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty."

FN7. Section 1363 of Professor Williston's treatise, entitled, "Contracts for Particular Service; Building Contracts," provides in relevant part: "Where the contractor fails to keep his agreement, the measure of the employer's damages ... is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance.... If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed.... *But consequential or special damages may also be recovered when they were foreseeable when the contract was made.*" (Emphasis added.) 11 S. Williston, supra, § 1363, pp. 344-47.

[5] We turn now to the defendant's second claim, namely, that the Appellate Court improperly determined that the trial court abused its discretion by deciding a factual *160 matter not properly before it on the motion in limine. Specifically, the defendant contends that the trial court properly ruled that, as a factual matter, lost profits could not be recovered in the present case because they were not reasonably foreseeable at the time the parties entered into the contract. We disagree.

[6][7] "[T]he motion in limine ... has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the **1190 right of any party to a fair trial." (Internal quotation marks omitted.) *State v. Pharr*, 44 Conn.App. 561, 581, 691 A.2d 1081 (1997). Accordingly, a party, through a motion in limine, may implore the court to decide a question of law; see *Sheiman v. Sheiman*, 72 Conn.App. 193, 201, 804 A.2d 983 (2002) (affirming trial court's ruling on motion in limine precluding testimony from treating psychiatrist as privileged); as well as some preliminary questions of fact. See *State v. Kelly*, 256 Conn. 23, 42, 770 A.2d 908 (2001) ("[w]hether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge" [internal quotation marks omitted]). Although broad, the discretion of a trial judge must yield to a litigant's "constitutional right to have factual issues resolved by the jury." *Mather v. Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988).

By its explicit terms, the defendant's motion in limine posited solely a question of law. Specifically, the motion sought to preclude evidence of lost profits on the legal premise that "[l]ost business and loss of business opportunities are not included in the measure of damages for the breach of *a* construction contract." (Emphasis added.) Indeed, the notation on the face of the motion reads, "Oral Argument Requested, Testimony Not *161 Required," [FN8] thus

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

836 A.2d 1183
(Cite as: 267 Conn. 148, 836 A.2d 1183)

Page 7

demonstrating that the defendant intended to present the trial court with a question of law only. Consistent with this understanding, no evidence was presented at the hearing on the motion in limine and the trial court's memorandum of decision is devoid of any factual findings establishing that lost profits were not contemplated by the parties at the time the contract was made. [FN9]

FN8. Practice Book § 11-18(a) provides in relevant part that, "oral argument shall be a matter of right, provided ... (2) the movant indicates at the bottom of the first page of the motion or on a reclaim slip that oral argument or testimony is desired...."

FN9. In applying the rule regarding lost profits to the present case, the trial court stated the following: "Applying the rule in *Hadley* [v. *Baxendale,* supra, at 9 Ex. 354] to the present case, the court concludes that [the defendant] could not reasonably have contemplated lost profits as a measure of damages in the event [it] were to breach the building agreement. Also, lost patients, lost patient referrals, and loss of business growth are not losses of the type usually resulting from a general contractor's breach of contract for failure to properly inspect, direct and supervise a subcontractor's installation of flooring. The contract does not state that [the defendant] was aware of special circumstances at the time of contracting, and, therefore, [the defendant] cannot reasonably be supposed to have foreseen liability for lost profits in the event of [a] breach."

[8] As the Appellate Court aptly concluded, "[t]he trial court was not asked to decide the question of whether it was reasonably foreseeable that the defendant, *in this case,* contemplated lost profits as a measure of damages in the event the contract was breached." (Emphasis in original.) *Ambroglo v. Beaver Road Associates,* supra, 71 Conn.App. at 582, 803 A.2d 338. Instead, as the motion in limine indicated, the trial court's inquiry was limited to determining whether, as a matter of law, lost profits could be included in the measure of damages for the breach of *a* construction contract. After properly deciding the legal question presented, however, that lost profits are recoverable in a breach of construction contract action, the trial court went on to conclude that, as a factual matter, lost profits could not be recovered in *\*I162* the present case *because they were not within the reasonable contemplation of the parties at the time they \*\*1191 entered into the contract.* "[T]he question whether a particular element of loss was reasonably foreseeable is a question of fact...." West Haven Sound Development Corp. v. West Haven, *supra, 201 Conn. at 333, 514 A.2d 734. The trial court therefore improperly delved into a question of fact that was not properly before it. It is axiomatic that issues of fact are traditionally the province of the jury.* State v. Hines, *187 Conn. 199, 210, 445 A.2d 314 (1982). Accordingly, we conclude that the Appellate Court properly determined that the trial court abused its discretion by deciding an issue of fact not before it on the motion in limine.*

The judgment is affirmed.

In this opinion the other justices concurred.

836 A.2d 1183, 267 Conn. 148

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# FLYNN CONTRACTING CORPORATION
Mechanical Insulation & Firestopping

573 Route 303  
Blauvelt, NY 10913

914.365.3000  
914.365.3090 FAX

5/31/00

Stamford Fire Department  
C/O Bob Sulitto Deputy Fire Marshall  
City Of Stamford

Re: 600 Summer St.

Gentlemen,

   We would like to express our gratitude for the opportunity of working with you both. We have installed two layers of 1 ½" thick Nelson Ceramic Blanket to obtain a two (2) hour rating on the kitchen exhaust ductwork. This application is in compliance with BOCA and NFPA 96 standards and we have been approved as a certified installer of the Nelson product. We will be looking forward to servicing you in the future.

Sincerely,

Martin Donohue  
Project Manager

*Service is our reputation.*

000991

# FLYNN CONTRACTING CORPORATION

*Mechanical Insulation & Firestopping*

573 Route 303  
Blauvelt, NY 10913

914.365.3000  
914.365.3090 FAX

5/19/00

Mr. Patrick Kennedy  
C/O Richard Burriesci  
2 Stamford Forum  
Stamford CT. 06901

Re: 600 Summer St.

Gentlemen,

   It was a pleasure meeting both of you and to be able to submit to you this contract in the amount of $23,580.00 to complete all necessary work to conform to the Stamford Fire Marshal violation pertaining to exhaust hood at Kennedy's Irish Pub & Restaurant. Along with this, I submit my certification from Nelson Firestop and both Safety Data and Technical Data that was approved by Robert Soulitto Deputy Fire Marshall.

We omit any scaffolding systems.

Sincerely,

Martin Donohue  
Project Manager

*Service is our reputation.*

000962